IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| ALBERT OPPOCHER,<br><br>    Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, *in her capacity as Acting Commissioner of the Social Security Administration*,<br><br>    Defendant. | MEMORANDUM DECISION AND ORDER<br><br><br>Case No. 2:13-cv-00741-EJF<br><br><br>Magistrate Judge Evelyn J. Furse |

  Plaintiff Albert Oppocher filed this action asking this Court to reverse or remand the final agency decision denying his Disability Insurance Benefits ("DIB") and Social Security Income ("SSI") under Titles II and XVI of the Social Security Act, *see* 42 U.S.C. §§ 401–434, 1381–1383f (2010). The Administrative Law Judge ("ALJ") determined that Mr. Oppocher did not qualify as disabled within the meaning of the Social Security Act. (Admin. R. Doc. 22, certified copy tr. of R. of admin. proceedings: Albert Oppocher (hereinafter "Tr. __").) Based on the Court's[1] careful consideration of the record, the parties' memoranda, and relevant legal authorities, the Court AFFIRMS the Commissioner's decision.[2]

### PROCEDURAL HISTORY

  In April 2010, Mr. Oppocher filed for DIB and SSI, alleging disability beginning July 5, 2008. (Tr. 22.) The Regional Commissioner denied Mr. Oppocher's claims on September 13,

---

[1] The parties jointly consented to this Court's determination of the case under 28 U.S.C. § 636(c). (ECF No. 9.)
[2] Pursuant to Civil Rule 7-1(f) of the Rules of Practice for the United States District Court for the District of Utah, the Court concludes it does not need oral argument and will determine the appeal on the basis of the written memoranda.

2010, and upon reconsideration on January 5, 2011.  (Tr. 22.)  At Mr. Oppocher's request, an ALJ held a hearing on March 15, 2012.  (Tr. 22.)  On May 15, 2012, the ALJ issued a decision finding Mr. Oppocher not disabled.  (Tr. 33.)  The Appeals Council denied Mr. Oppocher's request for review on July 17, 2013, (tr. 1), making the ALJ's Decision the Commissioner's final decision for purposes of judicial review under 42 U.S.C. §§ 405(g) and 1383(c)(3).  *See* 20 C.F.R. §§ 404.981, 416.1481.

## FACTUAL BACKGROUND

Mr. Oppocher, born August 13, 1964, has past relevant work experience as a carpenter, heavy equipment operator, and truck driver.  (Tr. 31–32.)

**A: Back Injury**

In 1998 Mr. Oppocher had back surgery (hemilaminectomy) and has experienced back pain ever since.  (Tr. 572, 498.)  The pain's severity increased in May 2008.  (Tr. 498.)  Timothy S. Grange, M.D., a spine specialist, treated Mr. Oppocher's back pain from August 2008 through October 2011.  (Tr. 486–502; tr. 25.)  An MRI taken August 1, 2008 showed a "bulge and protrusion probably encroaching on the left L5 root, L3-L4 bulge with potential L4 root irritation."  (Tr. 25; s*ee* tr. 498.)  Dr. Grange declined to prescribe "formal physical therapy," (tr. 500), but did administer an epidural injection on August 27, 2008.  (Tr. 493.)

In November 2008, Mr. Oppocher described his pain ranging from five to eight on a ten-point scale and explained he worked twenty hours per week "on light duty helping a friend with his carpentry shop."  (Tr. 488.)  During a January 2009 visit, Mr. Oppocher reported "feeling a bit worse overall" and requested another epidural injection.  (Tr. 494.)  At the time, Mr. Oppocher worked twenty to thirty hours weekly and "walk[ed] independently with adequate strength and balance."  (Tr. 494.)  Mr. Oppocher continued to work at least twenty hours per

week through August 2009. (Tr. 486, 490, 495.) During a December 2009 examination, Mr. Oppocher reported "his pain tends to be a little worse in the winter months" but that he had a job interview scheduled. (Tr. 491.)

The ALJ summarized Dr. Grange's records of examinations conducted between December 2009 and November 2010:

> In December 2009, Dr. Grange reported the claimant's left leg was weaker than the right and he did have a positive straight leg raise on the left. In February 2010 Dr. Grange noted the claimant rose with difficulty and his back was tender. On April 26, 2010, straight leg raises were negative, gait was good and deep tendon reflexes were symmetrical. Doctor Grange noted low back tenderness and the ability to reach within 12 inches of the floor. In November 2010 the claimant is seen with movements that were stiff and cautious.

(Tr. 25 (citations omitted).)

In January 2011, while working a "month-and-a-half, maybe two months at most" stint as a Chevron cashier, (tr. 46), Mr. Oppocher reported back pain "as aching and constant with radiation to the lower extremities." (Tr. 549.) Dr. Grange noted Mr. Oppocher "rises slowly from a seated position." (Tr. 549.) In October 2011, Dr. Grange completed a medical source statement at Mr. Oppocher's request. (Tr. 552–53.) He diagnosed Mr. Oppocher with low back and lower extremity radiating pain and degenerative disc disease. (Tr. 552.) Dr. Grange asserted that Mr. Oppocher could stand for thirty minutes at one time and up to two hours daily, sit for forty-five to sixty minutes at one time and for six hours daily, and lift twenty pounds occasionally and ten pounds frequently. (Tr. 553.)

State agency physicians F. Yamamoto, M.D. and Lewis J. Barton, M.D. also reviewed the record and asserted that Mr. Oppocher retained physical abilities consistent with a reduced range of light work. (Tr. 521-28, 547.)

**B: Depression, General Anxiety Disorder, and Alcohol Dependence**

In January 2010 Mr. Oppocher received emergency medical treatment for a "mental breakdown" including suicidal and homicidal ideation. (Tr. 295.) Mr. Oppocher reported extreme distress derived from an acrimonious divorce and child custody dispute. (Tr. 295.) Mr. Oppocher also reported that he stopped taking the Celexa the doctor had prescribed because of its very negative side effects "involv[ing] an escalation of his thoughts of harming himself and [another person]." (Tr. 321.) The University of Utah Hospital admitted Mr. Oppocher for treatment and diagnosed him with recurrent severe major depressive disorder along with chronic back pain. (Tr. 297–98.) The hospital noted Mr. Oppocher's blood alcohol level was "168." (Tr. 297.) Mr. Oppocher responded well to Remeron (an antidepressant medication) and "had a significant improvement in his mood symptoms during the course of hospitalization." (Tr. 323.) Upon discharge on February 5, 2010, hospital records show Mr. Oppocher's "acute risk of harm to self was low given improved mood, lack of suicidal thoughts, and good family support." (Tr. 324.)

In April 2010, Mr. Oppocher received emergency medical treatment after being discovered lying on his floor intoxicated and combative. (Tr. 347–349.) The hospital found him violent to himself and others and restrained him but discharged him early the next morning. (Tr. 355–56, 376.)

Nathan Marshall, M.D., Mr. Oppocher's primary care provider, (tr. 324), saw Mr. Oppocher on four occasions between 2006 and 2010. (Tr. 476–77, 478–79, 480–81, 482–83.) Dr. Marshall asserted in a checkbox-style report that Mr. Oppocher would have "insignificant" limitations due to his depression, except for "moderate" limitations in his ability to understand, remember, and carry out detailed instructions. (Tr. 555–556.)

After a March 2012 psychological evaluation, psychologist Ralph W. Gant, Ph.D., diagnosed Mr. Oppocher with major depressive disorder recurrent/severe, generalized anxiety disorder, and panic disorder with agoraphobia. (Tr. 564.) Dr. Gant also found that Mr. Oppocher would not "meet competitive standards" in almost all areas of mental functioning and could not work for at least one year. (Tr. 564, 566–71.)

State agency psychologist Helen Kjolby, Ph.D., who did not personally examine Mr. Oppocher, asserted in a checkbox-style mental RFC assessment that Mr. Oppocher had only a "moderately limited" ability to complete a normal workweek without interruptions from psychologically-based symptoms, to interact appropriately with the general public, and to set realistic goals or make plans independently of others. (Tr. 517–20.) In her functional capacity assessment, Dr. Kjolby concluded Mr. Oppocher "would be capable of work within current medical limitations" if he "stays sober." (Tr. 519.) State agency psychologist Melvin Sawyer, Ph.D., later reviewed the record and agreed with Dr. Kjolby. (Tr. 546.)

Lastly, the ALJ summarized Mr. Oppocher's apparently ongoing substance abuse treatment:

> A letter from Ines Korbanka, licensed professional counselor (LPC), stated [Mr. Oppocher] has been in outpatient substance abuse treatment at the Family Counseling Center since May 2010 (Exhibit 11F/3). The claimant had been diagnosed with alcohol abuse; Major depressive disorder, recurrent, in full remission; Generalized anxiety disorder and a GAF [Global Assessment of Functioning] of 50 (Exhibit 11F/3).

(Tr. 25.)

## STANDARD OF REVIEW

42 U.S.C. §§ 405(g) and 1383(c)(3) provide for judicial review of a final decision of the Commissioner of the Social Security Administration ("SSA"). The Court reviews the Commissioner's decision to determine whether the record as a whole contains substantial

5

evidence in support of the Commissioner's factual findings and whether the SSA applied the correct legal standards. 42 U.S.C. §§ 405(g), 1383(c)(3); *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). The Commissioner's findings shall stand if supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3).

Adequate, relevant evidence that a reasonable mind might accept to support a conclusion constitutes substantial evidence, and "[e]vidence is insubstantial if it is overwhelmingly contradicted by other evidence." *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994).[3] The standard "requires more than a scintilla, but less than a preponderance." *Lax*, 489 F.3d at 1084. "Evidence is not substantial if it is overwhelmed by other evidence—particularly certain types of evidence (e.g., that offered by treating physicians)—or if it really constitutes not evidence but mere conclusion." *Gossett v. Bowen*, 862 F.2d 802, 805 (10th Cir. 1988) (internal quotation marks and citations omitted). Moreover, "[a] finding of 'no substantial evidence' will be found only where there is a conspicuous absence of credible choices or no contrary medical evidence." *Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (internal quotation marks and citations omitted).

Although the reviewing court considers "whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases," the court "will not reweigh the evidence or substitute [its] judgment for the Commissioner's." *Lax*, 489 F.3d at 1084 (internal quotation marks and citations omitted). The court will "review only the *sufficiency* of the evidence." *Oldham v. Astrue,* 509 F.3d 1254, 1257 (10th Cir. 2007) (emphasis in original). The court does not have to accept the Commissioner's findings mechanically, but "examine the record as a whole, including whatever in the record fairly detracts from the weight

---

[3] Courts apply the same analysis in determining disability under Title II and Title XVI. *See House v. Astrue,* 500 F.3d 741, 742 n.2 (8th Cir. 2007).

of the [Commissioner's] decision and, on that basis, determine if the substantiality of the evidence test has been met." *Glenn v. Shalala*, 21 F.3d 983, 984 (10th Cir. 1994) (internal quotation marks and citation omitted).  "'The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence,'" and the court may not "displace the agenc[y's] choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo.'"  *Lax*, 489 F.3d at 1084 (*quoting Zoltanksi v. FAA*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

In addition to a lack of substantial evidence, the Court may reverse where the Commission uses the wrong legal standards or the Commissioner fails to demonstrate reliance on the correct legal standards.  *See Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994); *Thomson v. Sullivan*; 987 F.2d 1482, 1487 (10th Cir. 1993); *Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1047 (10th Cir. 1993).

## Analysis

The Social Security Act ("Act") defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  Moreover, the Act considers an individual disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* §§ 423(d)(2)(A), 1382c(a)(3)(B).

In determining whether a claimant qualifies as disabled within the meaning of the Act, the SSA employs a five-step sequential evaluation. *See* 20 C.F.R. §§ 404.1520, 416.920; *Williams v. Bowen*, 844 F.2d 748, 750-53 (10th Cir. 1988); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The analysis evaluates whether:

(1) The claimant presently engages in substantial gainful activity;
(2) The claimant has a medically severe physical or mental impairment or impairments;
(3) The impairment is equivalent to one of the impairments listed in the appendix of the relevant disability regulation which preclude substantial gainful activity;
(4) The impairment prevents the claimant from performing his or her past work; and
(5) The claimant possesses a residual functional capacity to perform other work in the national economy considering his or her age, education, and work experience.

*See* 20 C.F.R. §§ 404.1520, 416.920. The claimant has the initial burden of establishing the disability in the first four steps. *Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir. 1989). At step five, the burden shifts to the Commissioner to show that the claimant retains the ability to perform other work existing in the national economy. *Id.*

The ALJ evaluated Mr. Oppocher's claim through step five, making the following findings of fact and conclusion of law with respect to Mr. Oppocher:

1. "[Mr. Oppocher] meets the insured status requirements of the Social Security Act through December 31, 2013." (Tr. 24.)
2. "[Mr. Oppocher] has not engaged in substantial gainful activity since July 5, 2008, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*)." (Tr. 24.)
3. "[Mr. Oppocher] has the following severe impairments: degenerative disc disease of the lumbar spine, Depression, General anxiety disorder, and alcohol dependence (20 CFR 404.1520(c) and 416.920(c))." (Tr. 24.)
4. "[Mr. Oppocher] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926)." (Tr. 25).
5. "After careful consideration of the entire record, the undersigned finds that [Mr. Oppocher] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except

> Can lift 20 pounds occasionally and 10 pounds frequently,
> Sit for 6 of 8 hours and stand/walk for 2 of 8 hours, with an option to sit/stand at will, sitting one hour and standing 20 minutes,
> Frequently climb ramps and stairs,
> Frequently balance, stoop, kneel, crouch and crawl,
> Never climb ladders, ropes or scaffolds,
> Mental
> The ability to understand, carry out and remember instructions not significantly limited.
> The ability to use judgment in making work-related decisions not significantly limited.
> The ability to respond appropriately to supervision, co-workers and work situations, only occasional job contact with general public.
> The ability to deal with changes in a routine work setting but no significant goal setting or plan making." (Tr. 27.)

6. "[Mr. Oppocher] is unable to perform any past relevant work (20 CFR 404.1565 and 416.965)." (Tr. 31.)
7. "[Mr. Oppocher] was born on August 13, 1964 and was 43 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963)." (Tr. 32.)
8. "[Mr. Oppocher] has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964)." (Tr. 32.)
9. "Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that [Mr. Oppocher] is 'not disabled,' whether or not [Mr. Oppocher] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2)." (Tr. 32.)
10. "Considering [Mr. Oppocher]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [Mr. Oppocher] can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a))." (Tr. 32.)
11. "[Mr. Oppocher] has not been under a disability, as defined in the Social Security Act, from July 5, 2008, through the date of this decision (20 CFR 404.1520(g) and 416.920(g))." (Tr. 33.)

In short, the ALJ concluded Mr. Oppocher does not have the residual functional capacity ("RFC") to perform his past relevant work as a carpenter, heavy equipment operator, and truck driver, but he can find employment in the national economy, and so he does not qualify as disabled.

In support of his claim that this Court should reverse the Commissioner's decision, Mr. Oppocher argues the ALJ erred: (1) by finding Mr. Oppocher did not meet listing 1.04; (2) by

failing to include Mr. Oppocher's limitations in his RFC due to improper questioning of the vocational expert; (3) by finding Mr. Oppocher not credible.[4] (Pl's Opening Br. 7, ECF No. 21.)

### I. Rejection of Listed Impairment at Step Three

Mr. Oppocher argues the ALJ erred at step three by finding he did not meet any of the Listing of Impairments, specifically listing 1.04, disorders of the spine. (Pl.'s Opening Brief at 7–9, ECF No. 21.) The ALJ's explanation, Mr. Oppocher contends, "is not sufficient for a court to make a meaningful review of [the ALJ's] thought process." (*Id.* at 9.)

Appendix 1 of Subpart P, 20 Code of Federal Regulations § 404 lists impairments that preclude substantial gainful employment. *See* 20 C.F.R. §§ 404.1520(d), 416.925(a). The claimant bears the burden to show that his impairment meets or equals the requirements of a listed impairment. *Fischer-Ross v. Barnhart*, 431 F.3d 729, 733 (10th Cir. 2005); *see* 42 U.S.C. § 423(d)(5); *see also Bowen,* 482 U.S. at 146. For an ALJ to find a claimant meets a listing, the claimant's impairment must "satisf[y] all of the criteria of that listing, including any relevant criteria in the introduction, and meet[] the duration requirement." 20 C.F.R. §§ 404.1525(c)(3), 416.925(c)(3). The claimant must show that he met the medical criteria for a continuous twelve-month period. 20 C.F.R. §§ 404.1525(c)(4), 416.925(c)(4). If a claimant's impairment does not meet a listing, his impairment may constitute the medical equivalent if he has "other findings related to [his] impairment that are at least of equal medical significance to the required criteria." 20 C.F.R. §§ 404.1526(b)(1)(ii), 416.926(b)(1)(ii). Where the claimant does not meet or equal a listing the ALJ must "discuss the evidence and explain why he found that [the claimant] was not disabled at step three." *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996) (citation omitted).

---

[4] By addressing only these points of alleged error in his opening brief, Mr. Oppocher waived any additional challenges to the ALJ's decision. *See Anderson v. Dep't of Labor*, 422 F.3d 1155, 1182 n.51 (10th Cir. 2005) (failing to raise appeal issues in opening brief waives those points because doing so deprives the opponent of the opportunity to address the arguments).

But inadequate analysis at step three may constitute harmless error if the "findings at other steps of the sequential process may provide a proper basis for upholding a step three conclusion that a claimant's impairments do not meet or equal any listed impairment." *Fischer-Ross*, 431 F.3d at 733.

To meet listing 1.04, a claimant must have a disorder of the spine "(e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture) resulting in compromise of a nerve root . . . or the spinal cord" with particular effects. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, listing 1.04. In his Opening Brief, Mr. Oppocher limits his argument to listing 1.04A. (Pl.'s Opening Br. 7–9, ECF No. 21.) Listing 1.04A requires the following: "Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)." 20 C.F.R. pt. 404, subpt. P, app. 1, listing 1.04A.

Despite Mr. Oppocher's contention that the ALJ failed to provide sufficient explanation of his denial at step three, this Court finds the ALJ's decision adequately explained, grounded in the correct legal standard, and supported by sufficient evidence.

The ALJ found Mr. Oppocher did not meet the listing because "the record evidence fails to demonstrate a nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss accompanied by sensory or reflex loss and positive straight leg raising (1.04A)." (Tr. 26.) The ALJ discussed particular medical records undermining Mr. Oppocher's claim in section three of his opinion. (Tr. 25.) As Mr. Oppocher notes, motor loss refers to muscle weakness. (Pl.'s Opening Br. 8 n.27, ECF No. 21.) To qualify

11

under listing 1.04, the claimant must have motor loss (muscle weakness) accompanied by sensory or reflex loss. *Clay v. Barnhart*, 444 F. Supp. 2d 1174, 1179 (D. Kan. 2006). The Decision describes the following evidence: "strength tests were within functional limitations[;] [h]e walked 200 feet without any problems," and a finding that Mr. Oppocher did not need physical therapy. (Tr. 25.) The record supports each of these findings. (*See* tr. 333-35 (strength within functional limits); 486 ("moves with good strength"); 487 ("walks with good strength and balance"); 490 ("walks with good strength and balance"); 494 "(adequate strength"); 497 ("moving with good strength"); 499 (adequate strength); 501 ("moving with good strength"); 549 ("[s]trength appears intact").) Thus substantial evidence supports the ALJ's finding of no muscle weakness; hence Mr. Oppocher does not meet listing 1.04.

Although Mr. Oppocher's treatment notes indicate "mild limitation in rotation and flexion in his trunk due to a radiating back," "stiff and cautious" movements, a positive straight leg raise on the left and other similar comments, (Pl.'s Opening Br. 8 n.26–27, 30, ECF No. 21), the presence of reported back problems does not require the ALJ to find the claimant disabled. Mr. Oppocher misapplies the standard guiding this Court: the Court examines the ALJ's opinion to determine if "substantial evidence" supports his findings, not whether the ALJ could have reached some other conclusion given the available information. *See O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994) (noting "'[s]ubstantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."'" (citations omitted)). The ALJ specifically discussed the August 1, 2008 MRI showing "bulge and protrusion probably encroaching on the left L5 root, L3-L4 bulge with potential L4 root irritation" but found it insufficient to meet listing 1.04A's requirements. (Tr. 26.)

The ALJ's discussion of Mr. Oppocher's records and his failure to meet listing 1.04A, (*see* tr. 24–27), satisfies *Clifton*'s requirements. *Clifton*, 79 F.3d at 1009. Accordingly, this Court finds the ALJ did not err at step three by finding Mr. Oppocher failed to meet any listing.

## II.  RFC Determination and Availability of Jobs

Mr. Oppocher argues the ALJ erred in evaluating his RFC by failing to consider the impact of his temperament, which he claims prevents him from doing repetitive work, and his periods of decompensation, which he claims prevent him from doing any of the proposed jobs. (Pl.'s Opening Br. 9–18, ECF No. 21.)  This Court disagrees.

A claimant's RFC reflects the ability to do physical, mental, and other work activities on a sustained basis despite limitations from the claimant's impairment*s*.  *See* 20 C.F.R. §§ 404.1545, 416.945; SSR 96–8p, 1996 WL 374184, at *2 (July 2, 1996).  The RFC reflects the most a person can do, despite his limitations.  *See*  SSR 96–8p at *2.  In determining the claimant's RFC, the decision maker considers all of the claimant's medically determinable impairments, including those considered not "severe."  *See* 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2).  The claimant bears the burden of providing evidence used in making the residual functional capacity finding.  *See* 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).

Mr. Oppocher claims "[a]ll of the jobs found by the vocational expert require the temperament to performing [sic] repetitive work, or performing [sic] continuously the same work, according to set procedures, sequence, or pace."  (Pl.'s Opening Br. 14, ECF No. 21.) Claiming this requirement disqualifies him from performing these jobs, Mr. Oppocher relies on Dr. Marshall's evaluation that "[h]e does not do repetitive motions well."  (Pl.'s Opening Br. 14, ECF No. 21 (*citing* tr. 572).)

The ALJ noted, however, that Dr. Marshall concluded Mr. Oppocher "had no restrictions as to his activities of daily living and mild limitations maintaining social functioning." (Tr. 30 (*citing* tr. 556).) Thus, while Dr. Marshall thinks Mr. Oppocher does not perform repetitive motions well, he obviously does not think that that condition rises to a level that prevents Mr. Oppocher from working, or his evaluation would have reflected greater limitations. Given Dr. Marshall's conclusions, substantial evidence supports the ALJ's finding.

The ALJ also considered Mr. Oppocher's period of decompensation. The Decision notes Mr. Oppocher "has experienced one to two episodes of decompensation, each of extended duration. The medical records contained evidence of one episode of decompensation, which lasted one week." (Tr. 26.) As conceded by Mr. Oppocher, he had an ER visit for decompensation with same-day discharge in 2007 and one hospitalization for decompensation in 2010 for nine days. (Pl.'s Opening Br. 16, ECF No. 21; *see also* tr. 274–294.) Mr. Oppocher collapses these findings with Dr. Gant's opinion that Mr. Oppocher suffers from anxiety to conclude that the ALJ found Mr. Oppocher would decompensate more than twelve to twenty-four days a year, making him unemployable. (*Id.* at 17–18.) However the ALJ never made that finding. Instead, the ALJ specifically found "the medical evidence of record does not indicate evidence of repeated episodes of decompensation of extended duration." (Tr. 26.) Substantial evidence supports the finding that Mr. Oppocher's episodes of decompensation occur infrequently enough that they will not prevent him from doing the jobs proffered. The Court further notes that the ALJ gives Dr. Gant no weight, as discussed below. Thus his opinion does not impact the ALJ's finding.

Mr. Oppocher also briefly contests the ALJ's rejection of Dr. Gant's finding that Mr. Oppocher will be off-task ninety percent of the workday. (Pl.'s Opening Br. 18, ECF No. 21.)

Substantial evidence supports the ALJ's rejection of Dr. Gant's findings. As noted in the Decision, Dr. Gant is "not a treating doctor. His assessment of the claimant is more severe than the claimant's own doctors opined," namely Dr. Marshall and Dr. Grange. (Tr. 30–31.) For these reasons, the ALJ accorded Dr. Gant's opinion "no weight." (Tr. 31.) Because the ALJ gives a basis to question Dr. Gant's reliability, and grounds that basis in substantial evidence, excluding Dr. Gant's findings from the RFC assessment followed the proper legal analysis. *See Richardson v. Perales*, 402 U.S. 389, 399 (1971) (noting the ALJ must weigh and resolve evidentiary conflicts and inconsistencies when considering medical opinion evidence).

The Decision makes clear that the ALJ considered all of Mr. Oppocher's medically determinable impairments when assessing his RFC. *See* 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2). Because the ALJ applied the correct legal standard and supported his decision with substantial evidence, the Court finds the ALJ did not err in assessing Mr. Oppocher's RFC or his potential employment.

### III. Evaluation of Mr. Oppocher's Credibility

Mr. Oppocher argues the ALJ erred by improperly rejecting Mr. Oppocher's complaints regarding the severity of his symptoms. (Pl's Opening Br. 18–19, ECF No. 21.) "'Credibility determinations are peculiarly the province of the finder of fact, and [a court] will not upset such determinations when supported by substantial evidence.'" *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (quoting *Diaz v. Sec'y of Health & Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990)). "However, '[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.'" *Id.* (quoting *Huston v. Bowen*, 838 F.2d 1125, 1133 (10th Cir. 1988)). If objective medical evidence shows a medical impairment that produces pain, the ALJ must consider the claimant's assertions of severe pain

and decide the extent to which the ALJ believes the claimant's assertions. *Id.* (citation omitted). To do this, the ALJ should consider such factors as

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

*Id.* (citation and internal quotation marks omitted). But this analysis "does not require a formalistic factor-by-factor recitation of the evidence. So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, the dictates of *Kepler* are satisfied." *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).

The ALJ found Mr. Oppocher's subjective complaints inconsistent with the objective medical evidence of record. (Tr. 28 ("[Mr. Oppocher's] statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible when the complete medical record is reviewed and considered.").) The ALJ thoroughly evaluated each of Mr. Oppocher's claims by examining the medical record and describing the inconsistencies between the subjective claims and the clinical information available.

For instance, the ALJ evaluated Mr. Oppocher's complaints about back pain. After reviewing Mr. Oppocher's claims concerning his pain ("[t]he claimant alleges constant back pain…"), (tr. 28), the ALJ explained why specific entries in the medical record undermine Mr. Oppocher's credibility. Both Dr. Barton and Dr. Yamamoto, the state agency physicians, asserted that Mr. Oppocher retained abilities consistent with a reduced range of light work. (Tr. 521–28, 547, 31.) The ALJ also cites to Dr. Grange, who "does not feel [Mr. Oppocher's] pain is as severe as [Mr. Oppocher] reported…" and asserted Mr. Oppocher has a light RFC. (Tr. 30, 552-53.) Dr. Marshall found that Mr. Oppocher "had no restrictions as to his activities of daily living

and mild limitations maintaining social functioning." (Tr. 30, 555–56.) Noting that Dr. Marshall has treated Mr. Oppocher since October 2006, the ALJ assigned Dr. Marshall's opinion "great weight." (Tr. 30–31.) As noted above, the ALJ need not discuss all the factors mentioned in the case law. *Qualls*, 206 F.3d at 1372.

Substantial evidence goes against Mr. Oppocher's claims of "constant back pain;" because the ALJ connected that evidence to his credibility finding, the Court upholds the ALJ's evaluation of Mr. Oppocher's credibility.

## CONCLUSION

Based on the foregoing, the Court finds that substantial evidence supports the Commissioner's decision and that the Commissioner followed the law. Therefore, the Court AFFIRMS the Commissioner's decision in this case.

DATED this 27th day of March, 2015.

BY THE COURT:

_____
Evelyn J. Furse
United States Magistrate Judge